## DORA MILLER AND HARRY MILLER, PLAINTIFFS-APPELLANTS, v. PUBLIC SERVICE COORDINATED TRANSPORT, A CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 18, 1950—Decided January 30, 1951.

428 

Before Judges FREUND, PROCTOR and ROGERS.

*Mr. Abraham I. Mayer* argued the cause for the appellants (*Messrs. Mayer & Mayer,* attorneys).

*Mr. Carl T. Freggens* argued the cause for the respondent (*Mr. James O. Boyd,* on the brief).

The opinion of the court was delivered by

FREUND, S. J. A. D. The plaintiff, Dora Miller, brought suit to recover for personal injuries sustained while alighting from one of the defendant's buses, in which she was a passenger. From a judgment of dismissal entered at the close of the plaintiffs' case, this appeal was taken.

The evidence shows that Mrs. Miller, her daughter and 2½-year-old grandson boarded the bus of the defendant and obtained seats without difficulty. The daughter was pregnant and Mrs. Miller was accompanying her to the doctor and dentist. When the bus reached their destination, it was "very crowded;" "all the seats and all the aisle were filled;" "it was fully packed, the front and back, every place." Mrs. Miller testified: "Well, I tried my best to get through and while I was trying to get myself through everybody was shoving to try to make room for me because there was no room, and as I got to the step they just pushed me and I fell down to the street." She asked the people a few times to "please stop pushing," but the driver did not say anything to them.

The plaintiff's daughter testified:

"Q. How did your mother get out if it was crowded?
"A. Well, the same way I got out. Pushed out and squeezed out. The crowd just pushed us out. I was pregnant at the time and I had my son and I pleaded with them to be careful.

"Q. Pleaded with whom? A. With the crowd, but they were just trying to be helpful, but it was very crowded.

"Q. Trying to be helpful by doing what? A. By making room for us to get through. I couldn't even reach the coin box because the passengers were standing over the box and I wasn't within distance of them and someone took the 10c and they deposited it for me in the coin box. I couldn't see the bus driver either because he was completely covered."

Clearly, from the testimony it may be inferred that if the witness could not see the bus driver because of the crowd, he could not see her, nor the exit by which she and her mother were alighting. Moreover, Mrs. Miller testified that when she fell, a passenger stepped down from the bus to help her, but had to run "after the bus to get it and the bus went on." It would thus appear that the driver was not able to see what had happened, which would bespeak such overcrowding that danger might likely arise, which foresight could have anticipated. *Rivers v. Pennsylvania R. R. Co.*, 83 *N. J. L.* 513 (*E. & A.* 1912); *Davis v. Public Service Coordinated Transport*, 113 *N. J. L.* 427 (*E. & A.* 1934).

 Two familiar principles apply: that a common carrier of passengers is under the duty to exercise a high degree of care, *Davis v. Public Service Coordinated Transport, supra,* and that on a motion for dismissal, the court must take as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor, *McKinney v. Public Service Interstate Transport Co.*, 4 *N. J.* 229, 243 (1950).

In *Hansen v. North Jersey Street Railway Co.*, 64 *N. J. L.* 686 (1900), the Court of Errors and Appeals held:

"A common carrier is bound to take a high degree of care of its passengers. This general duty includes a specific responsibility as to the entrances and exits provided for its vehicles. * * * The defendant was, therefore, bound specifically to use a high degree of care to protect the plaintiff, not indeed from crowding *per se*, but from danger likely to arise from crowding. Considerations of public policy strengthen this conclusion. If common carriers are to be allowed to cram their cars with passengers, to their own profit and the discomfort of the public, they should be held all the more to a strict and

active responsibility to use due care to secure safe entrances and exits. Otherwise, the obligation of a plain duty will be weakened by embarrassments of their own creation. It is important to consider, in every such case, whether the danger to the passenger was one that the common carrier should have foreseen. * * * The Court of Appeals of New York, in *Lehr v. Lehigh and Hudson Passenger Railroad Co.* (118 *N. Y.* 556, 23 *N. E.* 889), * * * thus expressed itself: 'It clearly appears that the defendant undertook to carry more passengers than could sit and stand within the car, and that both platform and steps were filled to their utmost capacity. The action of persons so crowded together and the great force which they exercise, sometimes almost unconsciously, on each other, is understood by carriers of passengers and their employees, and the court would not have been justified in non-suiting the plaintiff and holding as a matter of law that the exercise of reasonable foresight would not lead the defendant to anticipate that over-crowding the car and its platforms might render accidents like the one which befell the plaintiff probable.' "

*Dunham v. Public Service Corp.,* 76 *N. J. L.* 452 (*Sup. Ct.* 1908); *Barney v. Hudson & Manhattan R. R. Co.,* 105 *N. J. L.* 274 (*Sup. Ct.* 1929); *Nazarro v. Hudson & Manhattan R. R. Co.,* 125 *N. J. L.* 108 (*Sup. Ct.* 1940).

In the instant case, although the testimony is that the bus passengers were trying to be helpful, which is to be expected under the circumstances, both witnesses testified unequivocally that when they were striving to get to the exit, the passengers kept pushing and shoving and that when Mrs. Miller arrived at the step, she was pushed out of the bus.

On the motion for dismissal, the plaintiff's account of the accident is to be taken as accurate, and if from the facts it might reasonably be inferred that due care on the part of the defendant would have prevented the accident, the issue of negligence is raised, requiring submission to the jury. So here.

Judgment reversed and a new trial ordered, costs to abide the event.

PROCTOR, J. A. D. (dissenting). My view of the record compels me to dissent from the majority opinion.

The evidence shows that Mrs. Miller, together with her daughter and 2½-year-old grandson, entered the bus and obtained seats. When the bus reached their destination all

of the seats were occupied and the aisle was filled. Mrs. Miller, followed by her daughter and grandson, proceeded to the exit door at the front of the bus. It does not appear that any other passengers were leaving the bus at that time. Mrs. Miller's explanation of the occurrence follows:

"Q. What happened as you were proceeding there? A. Well, I tried my best to get through, and while I was trying to get myself through everybody was shoving to try to make room for me because there was no room, and as I got to the step they just pushed me and I fell into the street."

Plaintiff also testified she asked the passengers to stop pushing, but there is no evidence the operator heard or could have heard her. Moreover, there is no evidence that any one pushed her prior to her mishap. The only other witness called by the plaintiffs was their daughter. She testified the bus became crowded *en route;* that Mrs. Miller started from her seat to leave the bus about one block before their destination; that the passengers were trying to be helpful by making room for them to get through the aisle; that "They (passengers) were cooperative. There was no room and they squeezed and pushed to make room for us." The daughter held the grandson by the hand and he was at her side as they got off the bus directly after Mrs. Miller.

While defendant, as a common carrier, is under a duty to exercise a high degree of care to protect its passengers from the acts of fellow passengers which might be reasonably foreseen, *Hansen v. North Jersey St. Ry. Co.,* 64 *N. J. L.* 686 (*E. & A.* 1900), and the crowding of passengers in a bus calls upon the common carrier to use a degree of care commensurate with the risk of danger, *Nazarro v. Hudson & Manhattan R. R. Co.,* 125 *N. J. L.* 108 (*Sup. Ct.* 1940); affirmed, 125 *N. J. L.* 509 (*E. & A.* 1941), overcrowding of a bus is not in itself negligence. *Lehberger v. Public Service Ry. Co.,* 79 *N. J. L.* 134 (*Sup. Ct.* 1909).

In the present case there was nothing discernible in the movement or conduct of the passengers from which the operator of the bus could have foreseen any danger to Mrs. Miller.

The passengers were orderly and "cooperative." The proofs, taken in their most favorable light for the plaintiffs, show nothing more than a crowded bus whose passengers were endeavoring to assist Mrs. Miller in removing herself from the bus. Crowding *per se* does not impose liability. See *Hansen v. North Jersey St. Ry. Co., supra; Nazarro v. Hudson & Manhattan R. R. Co., supra.* Defendant is not an insurer of the passenger's safety and, in the absence of negligence, is not answerable.

In the cases cited in the majority opinion, there were circumstances, in addition to the crowding, from which the carrier should have anticipated danger to its passengers. In *Hansen v. North Jersey St. Ry. Co., supra,* there was evidence that the motorman of the carrier observed "that the outgoing persons were pressing forward so as to exert considerable force" and that "acts of violent rudeness were committed towards the plaintiff" in the immediate presence of the motorman. In *Dunham v. Public Service Corporation,* 76 *N. J. L.* 452 (*Sup. Ct.* 1908), the case, on demurrer to the declaration, turned on the question of plaintiff's contributory negligence. In *Barney v. Hudson & Manhattan R. R. Co.,* 105 *N. J. L.* 274 (*Sup. Ct.* 1929), the conductor "slammed" the door of the car on plaintiff's fingers. In *Nazarro v. Hudson & Manhattan R. R. Co., supra,* the station platform became extremely overcrowded due to a delay in the train schedule during the rush hour, and defendant's guards failed to control the rush of passengers to board the train. Compare *Lehberger v. Public Service Ry. Co., supra.* The question of crowding is not involved in the other cases cited. In *Rivers v. Pennsylvania R. R. Co.,* 83 *N. J. L.* 513 (*E. & A.* 1912), the negligence of the defendant carrier consisted of a sudden "jerk," causing the plaintiff passenger to be thrown off the train. In *Davis v. Public Service Coordinated Transport,* 113 *N. J. L.* 427 (*E. & A.* 1934), the plaintiff passenger was injured when the bus collided with a pole.

I think the action of the trial court in dismissing plaintiffs' case was proper.